ERIC F. YUHL (SBN 102051)
COLIN A. YUHL (SBN 259196)
**YUHL CARR LLP**
4676 Admiralty Way, Suite 550
Marina Del Rey, CA 90292
Tel.: (310) 827-2800
Fax: (310) 827-4200

DOUGLAS H. WIGDOR (NY SBN 2609469)
DAVID E. GOTTLIEB (NY SBN 4415568)
ELIZABETH J. CHEN (NY SBN 5126214)
(All to be admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845

JEANNE CHRISTENSEN (NY SBN 2622124)
**IMBESI CHRISTENSEN**
(To be admitted *pro hac vice*)
450 Seventh Avenue, 14th Floor
New York, NY 10123
Tel.: (212) 736-5588
Fax: (866) 830-7484

Attorneys for Plaintiffs,
**HYEJIN LEE, RUIQI YE, YOLIN HAN**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYEJIN LEE, RUIQI YE and YOLIN HAN, individually and on behalf of all other similarly-situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SEPHORA USA, INC. and LVMH MOET HENNESSY LOUIS VUITTON, INC.,<br><br>Defendants. | Case No.: _____<br><br>**JURY TRIAL DEMAND**<br><br>**COMPLAINT FOR RACE DISCRIMINATION AND BREACH OF CONTRACT**<br><br>**CLASS ACTION** |

Plaintiffs Hyejin Lee, Ruiqi Ye and Yolin Han (collectively, "Plaintiffs"), on behalf of themselves and all other similarly-situated individuals, by and through undersigned counsel Yuhl Carr LLP, Wigdor LLP and Imbesi Christensen, as and for their Class Action Complaint against Defendants Sephora USA, Inc. and LVMH Moet Hennessy Louis Vuitton, Inc. (collectively, "Sephora," the "Company" or "Defendants"), hereby allege as follows:

## NATURE OF THE CLAIMS

1.      Despite significant media coverage of so-called "shop and frisk" cases – where companies have been accused of discriminating against minority customers while shopping in retail stores – Sephora has brazenly taken this practice to the internet.  Specifically, Sephora has blocked and/or deactivated accounts of customers of perceived Chinese/Asian descent based on the ill-founded and discriminatory belief that all Chinese/Asian customers abuse discount sales to engage in bulk purchasing for re-sale.

2.      This is a class action alleging unlawful discriminatory conduct by Sephora towards customers involved in its "Beauty Insider" rewards program who are and/or are perceived as being of Chinese/Asian descent (the "Class" or "Class Members"), in violation of 42 U.S.C. § 1981 ("Section 1981") and 41 U.S.C. § 1982 ("Section 1982") and in breach of customer contracts ("Breach of Contract").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant Sephora is headquartered in this district, a substantial part of

the events and omissions giving rise to this action occurred in this district and because

Defendants have corporate offices that can be found and conduct business in this district.

## PARTIES

5.      Plaintiff Hyejin Lee is a woman of South Korean descent who resides in San Diego, California.  At all relevant times herein, Ms. Lee was a member of Defendants' Beauty Insider program and a customer of Sephora.

6.      Plaintiff Ruiqi Ye is a woman of Chinese descent who resides in Santa Barbara, California.  At all relevant times herein, Ms. Ye was a member of Defendants' Beauty Insider program and a customer of Sephora.

7.      Plaintiff Yolin Han is a woman of Chinese descent who resides in San Diego, California. At all relevant times herein, Ms. Han was a member of Defendants' Beauty Insider program and a customer of Sephora.

8.      Defendant Sephora USA, Inc. is a Delaware corporation with its headquarters in San Francisco, California and corporate offices in New York, New York.  Sephora owns and operates approximately 1,900 stores in 29 countries worldwide, with approximately 360 stores across North America.

9.      Defendant LVMH Moet Hennessy Louis Vuitton Inc. ("LVMH") is a Delaware corporation with its headquarters in New York, New York.  LVMH owns Sephora, and Sephora is a wholly owned subsidiary of LVMH.

## FACTUAL ALLEGATIONS

### Overview

10.      Sephora is a retail cosmetics chain that operates approximately 1,900 stores in 29 countries worldwide, with over 360 stores across North America.

11.     In 1998, Sephora opened its first U.S. store in New York, and launched its online store, www.Sephora.com, the following year.

12.     In 2007, Sephora initiated a client loyalty program called "Beauty Insider," a rewards based system, similar to frequent flyer mileage rewards programs.  Customers enrolled in Beauty Insider accumulate points based on the value of purchases made in Sephora stores or online.  Each dollar spent within the program correlates to a point earned.

13.     Currently, Sephora offers three tiers of Beauty Insider membership.

14.     First, any customer can enroll in the basic Beauty Insider program and earn points with their purchases.

15.     Second, customers who spend a minimum of $350 (earning 350 points) in a calendar year qualify for membership as a "Very Important Beauty Insider" or "VIB."  VIB is a premium level of Beauty Insider that provides such members access to exclusive gifts, event invitations, and early access to select products.

16.     Third, the most exclusive level of Beauty Insider members is called "VIB Rouge," which is reserved for customers who spend $1,000 or more (earning a minimum of 1,000 points) in a calendar year.  VIB Rouge members are entitled to benefits beyond those of the basic and VIB members.

17.     Annually, Sephora offers an exclusive five-day sale to VIB and VIB Rouge members, during which all purchases made by these customers in-person at Sephora stores or online are sold at a 20% discount.

18.     According to marketing emails sent by Sephora, there are no restrictions on the items available for the 20% reduction and no limitations on the number or quantities of items a customer may purchase during the five-day period.

**The November 6 through 10, 2014 Discount Offer to VIB and VIB Rouge Members**

19.   Beginning in October 2014, VIB and VIB Rouge customers began receiving notifications via email and regular mail about the exclusive annual 20% discount sale scheduled for November 6 through 10, 2014 (the "Discount Offer").   The Discount Offer was available to customers both in stores and online.

20.   To receive the 20% discount in stores, customers were required to present a copy of their personalized Discount Offer in email or print format.

21.   To redeem the offer online, customers were required to simply enter a promotional code, "GIFTVIB," during the online checkout process.

22.   As part of the Discount Offer, VIB and VIB Rouge customers received information allowing them to "share" their 20% discount with one friend during the five-day period.

23.   However, the friend would only be eligible to purchase a single item.

24.   To receive the benefit in a physical Sephora location, the friend was required to be present with the VIB or VIB Rouge member in the Sephora store at the time of purchase.

25.   To receive the benefit online, the friend would be required to enter a "unique, one-time promo code" which would be received by email.

26.   Upon information and belief, VIB or VIB Rouge members were eligible to exercise their discounts under the Discount Offer beginning at 12:00 a.m. on November 6, 2014.

**The Sephora.com Website Crash on November 6, 2014**

27.   Sometime on November 6, 2014, the Sephora website crashed and no customers were able to access their accounts or make any purchases.

28.   During the late evening on November 6, 2014, access to the website was restored.

29.     Sephora posted an online statement on November 7, 2014, on its Facebook page, explaining that the crash was due to excessive online traffic.

30.     Specifically, the Company claimed that the website malfunctioned due to "high levels of bulk buys for reselling purposes in North America and other countries."

31.     The Company's statement on Facebook set forth the following details:

> In an effort to restore website functionality, some of our loyal North American and international customers were temporarily blocked….  We have, indeed, de-activated accounts due to reselling – a pervasive issue throughout the industry and the world. As part of our ongoing commitment to protecting our clients and our brands, we have identified certain entities who take advantage of promotional opportunities to purchase products in large volume on our website and re-sell them through other channels. After careful consideration, we have deactivated these accounts in order to optimize product availability for the majority of our clients, as well as ensure that consumers are not subject to increased prices or products that are not being handled or stored properly.

32.     Shockingly, what Sephora declined to disclose in its public statement was the fact that on November 6, 2014, it only blocked and/or deactivated the VIB and VIB Rouge accounts that were:

> (i)      associated with email addresses with names that appeared to signify Chinese/Asian race/ethnicity/national origin/descent regardless of the web domain used; and/or

> (ii)     using web domains originating in China/Asia, including *inter alia*, qq.com, 126.com and 163.com.

33.     By the time Sephora's website functionality was restored, thousands of VIB and VIB Rouge customers' accounts had been blocked or deactivated.

34.     Upon information and belief, more than 95% of these blocked and deactivated accounts belonged to individuals residing in the United States.

35.     These customers were not "bulk buyers" or entities involved in "retail re-selling" of Sephora products.

36.     Rather, they were predominately individuals, many making cosmetic purchases between $350 and $999 in a calendar year who did not even qualify for the highest tier of membership, VIB Rouge.

37.     Significantly, Sephora did not block the accounts of VIB or VIB Rouge customers whose accounts were not associated with Chinese/Asian web domains or customers with surnames that did not appear to be Chinese/Asian.

38.     In addition, as a result of Sephora's alleged attempts to "fix" the website, thousands of Beauty Insider customers who had basic membership only – not VIB or VIB Rouge members – also had their accounts blocked or deactivated simply because their accounts were associated with Chinese/Asian web domain addresses and/or actual or perceived Chinese/Asian surnames.

39.     Clearly, customers who failed to purchase even $350 worth of items in a calendar year were not involved in "bulk purchases" or retail re-sales of Sephora products.

40.     Importantly, customers who do not have email addresses with Chinese/Asian web domains and/or names that are or appear to be of Chinese/Asian descent did not have their accounts blocked or deactivated during the period of the Discount Offer.

41.     To date, no explanation has been provided by Sephora as to why customers of or perceived to be of Chinese/Asian descent were singled out while seemingly non-Chinese/Asian customers were permitted account accessibility once the website was restored.

42.     The blocking and/or deactivation of specific customer accounts based on the actual or perceived race/ethnicity/descent of the accountholder was not related in any meaningful way to the restoration of website functionality.

**Sephora's Disingenuous Offer to Assist Blocked Beauty Insider Customers**

43.     As part of Sephora's public statement on November 7, 2014, the company claimed to establish a help line for customers who could not access their accounts:

> We have established a VIB hotline to ensure that if we are able to verify that your account was erroneously deactivated, it is reactivated immediately. Please call 877-VIB-ONLY (1-877-842-6659). If you experience any difficulties placing your order please contact us at 1-877-SEPHORA (1-877-737-4672) or email us at client.service@sephora.com.

44.     As evident on Sephora's Facebook page and in a related thread on a Reddit webpage, during the remaining days of the Discount Offer, attempts by customers of actual and/or perceived Chinese/Asian race/ethnicity/national origin/descent to receive assistance from Sephora customer service were fruitless.

45.     For example, in response to the November 7, 2014 statement, customers posted the following on Sephora's Facebook page:

> My account got locked up too. After calling the customer service several times, all I got was "this is a business decision, there's no estimate of how long the suspension will last and no specific reason can be provided". What did I do wrong?! I never purchased large quantity of beauty products from Sephora (if that's what Sephora wanted), my total points in the account is less than 300 and my points for this year is only around 180. I made purchases at both the original prices and the discounted prices, and my account is linked to only one US address, I really don't understand why I was suspected as a reseller. Just because I have a Chinese name and registered with a Chinese email address?! Tell me this is not called racist!!

> I'm a [R]ouge member, but right now I can buy NOTHING on the Sephora website. I called customer service and the lady said my

account was disactivated, and I needed to go to a retail store! That's ridiculous! I mean I've spent so much money in your store and this is the way you treat me?! Because I'm a Chinese, so you guys disactivate my account??? Is this kind of discrimination? Who can tell me if I can sue them beause of this? Sooooooo disappointed:(

Disgusting. Those ones who are not a reseller at all get blocked also and almost we are Asians. By calling the sephora customer service they told me I violated the term of uses. What term of uses? Okay the reason is I refresh the website too many times because Of the down of the website? Ridiculous. And I can't unblock account? This sale and this company is awful. Never want to buy something again, bye~

46.     By November 10, 2014, Sephora's Facebook page was flooded with hundreds of posts by customers with actual or perceived Chinese/Asian surnames or email addresses with Chinese/Asian web domains expressing their frustration and inability to receive any assistance from Sephora customer service or the 1-877-842-6659 service line.

47.     To date, Sephora has failed to provide any explanation as to why Beauty Insider customers at all three levels with non-Chinese/Asian surnames or non-Chinese/Asian web domain email addresses were not blocked and/or deactivated during the period of the Discount Offer, while thousands of actual or perceived Chinese/Asian customers' accounts were blocked, and remain blocked, or have had their accounts permanently deactivated.

**Damages to Potential Class Members**

48.     The Beauty Insider membership agreement sets forth that deactivation of an account will result in the loss of all accumulated reward points.

49.     In relevant part, the agreement reads: "If your Membership is revoked, any points in your account will automatically expire."

50.     As a result of Sephora's decision to block and/or deactivate the accounts of actual or perceived Chinese/Asian customers, such Beauty Insider customers have lost their accumulated rewards points.

51.     Moreover, for those VIB and VIB Rouge deactivated customers, their VIB status was lost.  Therefore, in order to return to their prior membership status, these individuals must spend an additional $350 or $1,000 in a calendar year.  Other benefits associated with membership, including products that members could redeem in exchange for points, coupons, free shipping and free beauty consultations, were also lost.

52.     Following the November 6, 2014 blocking and/or deactivation of basic Beauty Insider, VIB and VIB Rouge members of actual or perceived Chinese/Asian descent, Sephora continued to send promotional emails to those same blocked and/or deactivated customers for additional discounts and offers despite the fact that these customers were unable to sign into their Sephora accounts.

53.     For example, on November 8, 2014, Sephora sent a promotional email to VIB and VIB Rouge customers about the Discount Offer entitled "Final days for 20% off + Urban Decay Reward."

54.     The promotional email included another link to the 20% off coupon and a promotional code for online use.   It also offered an eye products gift set redeemable for 500 points, exclusively to VIB members.

55.     As set forth above, the blocked and/or deactivated customers were not able to redeem points they had earned or purchase items from Sephora.

## <u>ALLEGATIONS OF THE CLASS REPRESENTATIVES</u>

**<u>Plaintiff Hyejin Lee</u>**

56.     The class is represented by Plaintiff Hyejin Lee ("Ms. Lee"), who was subjected to discrimination and other unlawful conduct at Sephora's online store at Sephora.com, accessed from New York, New York.

57.     The treatment suffered by Ms. Lee was the result of Defendants' pattern and practice of discrimination and other unlawful conduct against customers of actual and/or perceived Chinese/Asian descent who shop at Sephora stores and on Sephora's website throughout the United States.

58.     In or around 2014, Ms. Lee joined the Beauty Insider program.  She attained and maintained VIB status in 2011 and 2012.  On or around November 9, 2013, Ms. Lee attained VIB Rouge status.

59.     The email address associated with her account includes her last name, Lee, in it, which is a common Asian last name, often associated with individuals of Chinese and/or Korean descent.

60.     Ms. Lee received a VIB "welcome packet" from Sephora that read as follows:

> Welcome to VIB. Your beauty addiction has officially paid off.
> As a very important beauty insider (VIB), you will receive all of
> your current beauty insider benefits, plus:
> - Advance access to sales
> - First dibs on our newest, hottest products
> - Special gifts and limited edition offers
> - Invitations to VIB only events
> - Welcome offers
>   - Take 10% off your next purchase
>   - Enjoy a complimentary makeover
>   - Get free shipping on your next purchase

61.     Ms. Lee later received a VIB Rouge "welcome email" from Sephora that read as follows:

> WELCOME TO THE TOP.  It doesn't get more beautiful than this. You've unlocked VIB Rogue, our newest and most premium Beauty Insider membership level.
>
> Enjoy your VIB Rogue status with these offers until 12/31/14.
> - Free shipping on all orders
> - Free makeovers anytime*
> - Special surprise gifts
> - Exclusive Rouge events
> - Digital VIB Rogue card
> - Get advice, visit BeautyTalk forums or talk to a concierge at 1.855.ROUGE.VIB

Celebrate your status: visit a store or shop online to get your Welcome Kit.

62.     Prior to November 6, 2014, Ms. Lee received numerous emails from Sephora regarding the Discount Offer and she intended to make purchases during the November 6 through 10, 2014 sale period.

63.     On November 7, 2014, Ms. Lee attempted to log into her VIB account on Sephora.com to make a purchase and received the following message:  "Sorry, your account has been locked for security reasons.  Please call Customer Service at 1-877-737-4672 to reset your password."

64.     Ms. Lee repeatedly attempted to sign into her account but was blocked for the next several days.

65.     On November 10, 2014, Ms. Lee called Sephora's Customer Service department. The first customer representative told her that there was nothing they could do.  Ms. Lee called two more times and spoke with two additional customer representatives who also stated that her account was deactivated and could not be reset with a password.

66.     Ms. Lee asked if she could open a new account and was told that she could not. The customer representative failed to explain why her existing account was deactivated or why she could not open another account.

67.     To date, Ms. Lee is blocked from accessing her VIB Rouge account online and is unable to redeem more than 2,600 previously accumulated points.  If Ms. Lee is forced to create a new account, she must spend another $350 to earn the 350 points needed to achieve VIB status yet again.

68.     The conduct engaged in, authorized, directed, acquiesced in and/or ratified by Defendants and their employees and agents, as described above, denied Ms. Lee, on the basis of her actual and/or perceived race, national origin, ethnicity and/or descent, the right to make and enforce contracts, including the right to enjoy all of the benefits, privileges, terms and conditions of a contractual relationship as is available to White citizens, denied her the same right enjoyed by White citizens to purchase, hold and/or convey personal property as is enjoyed by White citizens, and breached an enforceable contract.

69.     Through the actions described above, Defendants acted knowingly, intentionally, maliciously, and/or with willful, wanton and reckless disregard for Ms. Lee's federally protected civil rights.  In the alternative, Defendants engaged in a practice that had a disparate and discriminatory impact in derogation of the civil rights of customers of actual and/or perceived Chinese/Asian race/ethnicity/national origin/descent.

70.     As a proximate result of the actions of Defendants, their agents and employees, as described above, Ms. Lee has suffered and continues to suffer irreparable loss and injury, including, but not limited to, economic loss, mental anguish, emotional pain and suffering, humiliation, embarrassment, physical and emotional distress, loss of enjoyment of life,

interference with life's daily activities and a deprivation of her civil rights.  For these injuries, Ms. Lee seeks compensatory damages to the fullest extent permitted under the law.

71.     Because Defendants acted knowingly, intentionally, maliciously and/or with willful, wanton and reckless disregard for Ms. Lee and/or her federally protected rights, Ms. Lee also seeks punitive damages.

**Plaintiff Ruiqi Ye**

72.     Plaintiff Ruiqi Ye ("Ms. Ye"), a resident of Santa Barbara, California, joined Sephora's Beauty Insider program in 2012.

73.     The email address associated with her account uses a Chinese web domain, @163.com.

74.     In or around December 2013, Ms. Chen attained VIB status after spending more than $350 on Sephora products and earning 350 Beauty Insider points in a calendar year.

75.     Ms. Ye received a Welcome Packet from Sephora that was substantially similar to the VIB one received by Ms. Lee.

76.     Prior to November 6, 2014, Ms. Ye received numerous mailings from Sephora regarding the Discount Offer, and she intended to make purchases during the period of November 6 through 10, 2014.

77.     On November 6, 2014, Ms. Ye attempt to log into her VIB account on Sephora.com to make a purchase and received the following message: "Sorry, your account has been locked for security reasons.  Please call Customer Service at 1-877-737-4672 to reset your password."

78.     Unfortunately, Ms. Ye's attempt to receive assistance from Customer Service failed.  Ms. Ye repeatedly attempted to sign into her account but it remained blocked.  Finally,

late in the day on November 8, 2014, Ms. Ye called Sephora's Customer Service department (1-877-737-4672).  The Sephora representative informed Ms. Ye that there "was nothing [she] could do to unblock the account" and she had "no idea why [Ms. Ye's] account was blocked." The customer service representative told her to go in-person to a store to access the discount.

79.     Ms. Ye read Sephora's statement on Facebook about the website failure and called the VIB hotline 877-VIB-ONLY (1-877-842-6659) for help. Again, Ms. Ye was told that her account could not be unblocked and nothing could be done.   Like hundreds of other customers, Ms. Ye commented on Sephora's Facebook page that something should be done to help the deactivated customers.  Less than 2 hours later, her comment was deleted and she was banned from further commenting on Sephora's Facebook page.

80.     On November 9, 2014, Ms. Ye went in-person to a Sephora store and purchased a small item.  She was not able to receive the 20% discount, however, because she did not have a copy of the discount code mailed to her.

81.     To date, Ms. Ye continues to be blocked from accessing her VIB account and is unable to redeem more than 300 accumulated points.

82.     Ms. Ye was also denied the ability to participate in the Discount Offer.

83.     If Ms. Ye is forced to create a new account, she must spend another $350 to earn the 350 points needed to achieve VIB status again.

84.     The conduct engaged in, authorized, directed, acquiesced in and/or ratified by Defendants and their employees and agents, as described above, denied Ms. Ye, on the basis of her actual and/or perceived race, national origin, ethnicity and/or descent, the right to make and enforce contracts, including the right to enjoy all of the benefits, privileges, terms and conditions of a contractual relationship as is available to White citizens, denied her the same right enjoyed

by White citizens to purchase, hold and/or convey personal property as is enjoyed by White citizens, and breached an enforceable contract.

85.     Through the actions described above, Defendants acted knowingly, intentionally, maliciously, and/or with willful, wanton and reckless disregard for Ms. Ye's federally protected civil rights.  In the alternative, Defendants engaged in a practice that had a disparate and discriminatory impact in derogation of the civil rights of customers of actual and/or perceived Chinese/Asian race/ethnicity/national origin/descent.

86.     As a proximate result of the actions of Defendants, their agents and employees, as described above, Ms. Ye has suffered and continues to suffer irreparable loss and injury, including, but not limited to, economic loss, mental anguish, emotional pain and suffering, humiliation, embarrassment, physical and emotional distress, loss of enjoyment of life, interference with life's daily activities and a deprivation of her civil rights.  For these injuries, Ms. Ye seeks compensatory damages to the fullest extent permitted under the law.

87.     Because Defendants acted knowingly, intentionally, maliciously and/or with willful, wanton and reckless disregard for Ms. Ye and/or her federally protected rights, Ms. Ye also seeks punitive damages.

**Plaintiff Yolin Han**

88.     Plaintiff Yolin Han ("Ms. Han"), a resident of San Diego, California, joined Sephora's Beauty Insider program in early 2014.

89.     The email address associated with her account uses a Chinese web domain, @163.com.

90.     In or around August 2014, Ms. Han attained VIB Rouge status after spending more than $1,000 on Sephora products in a calendar year.

91.     Ms. Han received a Welcome Packet from Sephora that was substantially similar to the one received by Ms. Lee.

92.     Prior to November 6, 2014, Ms. Han received numerous emails from Sephora regarding the Discount Offer, and she intended to make purchases during the period of November 6 through 10, 2014.

93.     Unrelated to the Discount Offer, Ms. Han made an online purchase using her VIB Rouge account on November 2, 2014.  That order was processed and Ms. Han received the items from that purchase.

94.     On November 6, 2014, Ms. Han attempt to log into her VIB Rouge account on Sephora.com to make a purchase and received the following message: "Sorry, your account has been locked for security reasons.  Please call Customer Service at 1-877-737-4672 to reset your password."

95.     That day, Ms. Han called the VIB hotline 877-VIB-ONLY (1-877-842-6659) for help. She was told by a customer service representative that their system was down and she should call back later.

96.     Later that day, Ms. Han again called the VIB hotline and with the assistance of a customer service representative, she placed an order for 5 items for a total amount of $113.60. The customer service representative told Ms. Han that her account would "un-block automatically" so she did not need to call back.

97.     On November 8, 2014, she attempted to log into her account to make another purchase. Unfortunately, she received the same message that her account was blocked. Ms. Han called the VIB hotline again.

98.     The Sephora representative informed Ms. Han that there "was nothing [she] could do to unblock the account" and responded to all of her questions with the same answer, "we are sorry, but you are not able to place an order at this time."

99.     Ms. Han requested that the customer service representative check on the order she placed over the telephone two days earlier.

100.    The representative told Ms. Han that the order had been "cancelled" because Sephora was unable to "verify payment information."  Ms. Han explained that she had placed an order with the same payment information on November 2, 2014, and it was verified.

101.    The Sephora representative told Ms. Han that the account was de-activated and there was nothing she could do to help Ms. Han.  Ms. Han never received the 5 items she believed she had ordered.

102.    Ms. Han attempted to contact Sephora via Facebook posts but received no response.  Ms. Han's multiple emails to Sephora have been ignored.

103.    To date, Ms. Han continues to be blocked from accessing her VIB Rouge account and is unable to redeem more than 200 accumulated points.

104.    Ms. Han was also denied the ability to participate in the Discount Offer.

105.    If Ms. Han is forced to create a new account, she must spend another $350 to earn the 350 points needed to achieve VIB status again.

106.    The conduct engaged in, authorized, directed, acquiesced in and/or ratified by Defendants and their employees and agents, as described above, denied Ms. Han, on the basis of her actual and/or perceived race, national origin, ethnicity and/or descent, the right to make and enforce contracts, including the right to enjoy all of the benefits, privileges, terms and conditions of a contractual relationship as is available to White citizens, denied her the same right enjoyed

by White citizens to purchase, hold and/or convey personal property as is enjoyed by White citizens, and breached an enforceable contract.

107.     Through the actions described above, Defendants acted knowingly, intentionally, maliciously, and/or with willful, wanton and reckless disregard for Ms. Han's federally protected civil rights.  In the alternative, Defendants engaged in a practice that had a disparate and discriminatory impact in derogation of the civil rights of customers of actual and/or perceived Chinese/Asian race/ethnicity/national origin/descent.

108.     As a proximate result of the actions of Defendants, their agents and employees, as described above, Ms. Han has suffered and continues to suffer irreparable loss and injury, including, but not limited to, economic loss, mental anguish, emotional pain and suffering, humiliation, embarrassment, physical and emotional distress, loss of enjoyment of life, interference with life's daily activities and a deprivation of her civil rights.  For these injuries, Ms. Han seeks compensatory damages to the fullest extent permitted under the law.

109.     Because Defendants acted knowingly, intentionally, maliciously and/or with willful, wanton and reckless disregard for Ms. Han and/or her federally protected rights, Ms. Han also seeks punitive damages.

## RULE 23 CLASS ACTION ALLEGATIONS

110.     Plaintiffs bring their Section 1981, Section 1982 and Breach of Contract claims as a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") on behalf of themselves and on behalf of all other similarly-situated persons.  Plaintiffs propose a class definition, subject to modification as may become necessary and appropriate, as follows:

> Sephora customers throughout the United States involved in its "Beauty Insider" rewards program who are and/or are perceived as being of Chinese/Asian race/ethnicity/national origin/descent and

were blocked and/or had their accounts deactivated during the website crash on and following November 6, 2014.

111.   Certification of the Class Members' claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiffs' claims and the claims of the Class Members.

112.   Plaintiffs have standing to seek such relief because of the adverse effect that Defendants' unlawful practices have had on them individually and on the Class Members.

113.   Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

114.   Certification of the Class Members' claims is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class Members and Defendants.

115.   Plaintiffs' claims raise questions of law and fact common to the Class Members, including but not limited to:

- Whether Defendants discriminated against Plaintiffs and the Class Members on the basis of their actual ethnicity/national original/descent;

- Whether Defendants discriminated against Plaintiffs and the Class Members on the basis of their perceived ethnicity/national original/descent;

- Whether Defendants entered into enforceable contracts with the Plaintiffs and the Class Members;

- Whether Defendants breached their contractual obligations to Plaintiffs and the Class Members.

116.   These common questions of law and fact arise from the same course of events, and each Class Member will make similar legal and factual arguments to prove liability.

117.    Plaintiffs' claims are typical of the claims of the Class Members.  The relief Plaintiffs seek for the unlawful practices complained of herein are also typical of the relief which is sought on behalf of the Class Members.

118.    Plaintiffs' interests are co-extensive with those of the Class Members that they seek to represent in this case.

119.    Plaintiffs are ready, willing and able to represent the Class Members fairly and to vigorously pursue their similar individual claims in this action.

120.    Plaintiffs have retained counsel who are qualified and experienced in class action litigation, and who are able to meet the time and fiscal demands necessary to litigate a class action of this size and complexity.

121.    The combined interests, experience and resources of Plaintiffs and their counsel to litigate the individual and Class Members' claims at issue in this case satisfy the adequacy of representation requirement of Rule 23(a)(4).

122.    The common issues of fact and law affecting Plaintiffs' claims and those of the Class Members, including the common issues identified above, predominate over any issues affecting only individual claims.

123.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the Class Members.  There will be no difficulty in the management of this action as a class action.

124.    The cost of proving Defendants' violations of Section 1981 and Section 1982 and Defendants' Breach of Contract makes it impracticable for Plaintiffs and the Class Members to pursue their claims individually.

125.    Maintenance of a class action promotes judicial economy by consolidating a large class of plaintiffs litigating identical claims.

126.    The claims of the Class Members interrelate such that the interests of the Class Members will be fairly and adequately protected in their absence.

127.    Additionally, the questions of law and fact common to the Class arise from the same course of events and each class member makes similar legal and factual arguments to prove the Defendants' liability.

128.    The number of individual Class Members is so numerous that joinder of all members is impracticable.  While the exact number of Class Members is unknown to Plaintiffs at the present time, upon information and belief, there are thousands of individuals affected by the unlawful conduct alleged herein and who would likely qualify and/or participate as Class Members.

### FIRST CAUSE OF ACTION
**Violations of 42 U.S.C. Section 1981**
*(On Behalf of Plaintiffs and the Class)*

129.    Plaintiffs, on behalf of themselves and the Class Members, repeat and re-allege each of the preceding paragraphs as if fully set forth herein.

130.    By the actions described above, among others, Defendants have denied Plaintiffs and the Class Members, on the basis of their actual and/or perceived race, national origin, ethnicity and/or descent, the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of a contractual relationship as is enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1981.

131.   By the actions described above, among others, Defendants have intentionally discriminated against Plaintiffs and the Class Members on the basis of their actual and/or perceived race, national origin, ethnicity and/or descent.

132.   In the alternative, by the actions described above, among others, Defendants have engaged in conduct that has had an unlawful discriminatory impact on individuals based on their race, national origin, ethnicity and/or descent.

133.   As a result of Defendants' conduct, Plaintiffs and the Class Members have suffered and continue to suffer injuries and damages.

## SECOND CAUSE OF ACTION
### Violations of 42 U.S.C. Section 1982
*(On Behalf of Plaintiffs and the Class)*

134.   Plaintiffs, on behalf of themselves and the Class Members, repeat and re-allege each of the preceding paragraphs as if fully set forth herein.

135.   By the actions described above, among others, Defendants have denied Plaintiffs and the Class Members, on the basis of their actual or perceived race, national origin, ethnicity and/or descent, the same right to purchase, hold and/or convey personal property as is enjoyed by White citizens of the United States, in violation of 42 U.S.C. § 1982.

136.   By the actions described above, among others, Defendants have intentionally discriminated against Plaintiffs and the Class Members on the basis of their actual and/or perceived race, national origin, ethnicity and/or descent.

137.   In the alternative, by the actions described above, among others, Defendants have engaged in conduct that has had an unlawful discriminatory impact on individuals based on their race, national origin, ethnicity and/or descent.

138.   As a result of Defendants' conduct, Plaintiffs and the Class Members have suffered and continue to suffer injuries and damages.

### THIRD CAUSE OF ACTION
**Breach of Contract**
*(On Behalf of Plaintiffs and the Class)*

139.   Each allegation contained in the preceding paragraphs, inclusive, is hereby repeated, re-alleged and incorporated by reference, as if fully set forth herein.

140.   Defendants and Plaintiffs entered into enforceable contracts for which there was a meeting of the minds, and which consisted of an offer by Defendants to Plaintiffs and the Class Members, acceptance by Plaintiffs and the Class Members and consideration by all parties.

141.   Defendants offered Plaintiffs and the Class Members the benefits of the Beauty Insider rewards program in exchange for signing up as a basic Beauty Insider and/or for spending certain amounts of money at Sephora.

142.   Plaintiffs and the Class Members accepted Defendants' offer by, *inter alia*, signing up for the Beauty Insider rewards program, agreeing to certain terms of service and/or spending certain amounts of money at Sephora.

143.   Plaintiffs and the Class Members fully performed all obligations under the contracts, but Defendants breached their obligations to Plaintiffs and the Class Members by, *inter alia*, blocking and/or deactivating Plaintiffs and the Class Members from their accounts and/or removing Beauty Insider status and/or reward points.

144.   Plaintiffs and the Class Members have been damaged from Defendants' breach of contract, and have suffered and continue to suffer injuries and damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Class Members they seek to represent, pray that the Court grant them relief as follows:

A.    Certify this case as a nationwide class action under Rule 23;

B.    Enter a declaratory judgment finding that the actions of Defendants alleged in this Complaint violate Section 1981, Section 1982 and constitute a breach of contract;

C.    Enter a permanent injunction enjoining Defendants from continuing to engage in the civil rights violations, discrimination and other unlawful conduct alleged in this Complaint;

D.    Enter a permanent injunction directing that Defendants take all affirmative steps necessary to remedy the effects of the civil rights violations, discrimination and other unlawful conduct alleged in this Complaint and to prevent repeated occurrences in the future;

E.    Award compensatory damages in an amount that would fully compensate Plaintiffs and other Class Members, plus prejudgment interest, in an amount to be determined at trial;

F.    Award punitive damages to Plaintiffs and other Class Members in an amount that would punish Defendants for the willful, wanton, and reckless unlawful conduct alleged in this Complaint that would effectively deter Defendants from future civil rights violations, discrimination, and other unlawful behavior, in an amount to be determined at trial;

G.    Award Plaintiffs and other Class Members their reasonable attorneys' fees, the fees and costs of experts, and costs of this action; and

H.    Order all other relief deemed just and equitable by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

1   Dated:  November 26, 2014
2          San Francisco, CA

Respectfully submitted,

YUHL CARR LLP

By:   /s/ Colin A. Yuhl
       Colin A. Yuhl

4676 Admiralty Way, Suite 550
Marina Del Rey, CA 90292
Telephone:  (310) 827-2800
Facsimile:  (310) 827-4200
eyuhl@yuhlcarr.com
cyuhl@yuhlcarr.com

WIGDOR LLP

By:   _____
       Douglas H. Wigdor
       David E. Gottlieb
       Elizabeth Chen
(All to be admitted *pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
echen@wigdorlaw.com

IMBESI CHRISTENSEN

By:   /s/ Jeanne Christensen
       Jeanne Christensen
(To be admitted *pro hac vice*)

450 Seventh Avenue, 14th Floor
New York, NY 10123
Telephone:  (212) 736-5588
Facsimile:  (866) 830-7484
jchristensen@lawicm.com

*Counsel for Plaintiffs*

*Lee et al. v. Sephora USA, Inc., et al.*

*Complaint for Damages*