DOUGLAS H. WIGDOR (NY SBN 2609469)
DAVID E. GOTTLIEB (NY SBN 4415568)
JEANNE M. CHRISTENSEN (NY SBN 2622124)
ELIZABETH J. CHEN (NY SBN 5126214)
(All admitted *pro hac vice*)
**WIGDOR LLP**
85 Fifth Avenue
New York, NY 10003
Tel.: (212) 257-6800
Fax: (212) 257-6845

JAMIE C. COUCHE (SBN 252001)
**ANDERSON & POOLE, P.C.**
601 California Street, Suite 1300
San Francisco, CA 94108
Telephone: (415) 956-6413
Facsimile: (415) 956-6416

Attorneys for Plaintiffs,
**RUIQI YE, YOLIN HAN**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUIQI YE and YOLIN HAN, individually and on behalf of all other similarly-situated individuals,<br><br>    Plaintiffs,<br><br>  v.<br><br>SEPHORA USA, INC.,<br><br>    Defendant. | Case No.: 3:14-cv-05237-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:   May 25, 2017<br>Time:   1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:  Hon. Edward M. Chen |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

NOTICE OF MOTION .......................................................................................................... 1

MEMORANDUM OF POINTS AND AUHTORITIES ......................................................... 2

I.      INTRODUCTION ....................................................................................................... 2

II.     BACKGROUND .......................................................................................................... 3

        A.      Plaintiffs' Allegations .................................................................................... 3

        B.      Class Counsel's Investigation and Discovery ................................................ 4

        C.      Settlement Negotiations ................................................................................. 6

        D.      Preliminary Settlement Approval ................................................................... 6

III.    THE SETTLEMENT ................................................................................................... 7

        A.      The Settlement Class ...................................................................................... 7

        B.      Benefits to the Class ....................................................................................... 7

                1.      The Settlement Fund ........................................................................... 7

                        a.      Payments to Authorized Claimants ......................................... 8

                        b.      The Claim Process ................................................................... 8

                        c.      Mailing of Settlement Payments ............................................. 9

                        d.      Disposition of Residual Funds ................................................ 9

        C.      Opt-Out and Objection Procedures .............................................................. 10

        D.      Release .......................................................................................................... 10

IV.     NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE
        COURT-APPROVED NOTICE PROGRAM ........................................................... 11

        A.      Mailed and E-mail Notice ............................................................................ 11

        B.      Additional Internet-Based Notice ................................................................ 12

C.      Settlement Website, E-mail Address and Toll-Free Number ...............................12

V.      THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE .......................12

VI.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.........14

A.      The Legal Standards for Settlement Approval.....................................................14

B.      The Relevant Factors Weigh in Favor of Granting Final Approval ....................15

1.      Strength of the Case .................................................................................15

2.      Risk, Expense, Complexity and Duration of Further Litigation...............16

3.      Risk of Maintaining Class Status Through Trial ......................................17

4.      Amount Offered in Settlement Versus Outcome at Trial ..........................18

5.      Extent of Discovery Completed and the State of Proceedings .................20

6.      Experience and Views of Class Counsel ..................................................21

7.      The Reaction of the Class ........................................................................21

C.      The Proposed *Cy Pres* Beneficiary is Reasonable ................................................22

D.      Named Plaintiffs' Request for Service Awards is Reasonable .............................23

E.      Class Counsel's Request for Fees and Expenses is Reasonable ...........................24

VII.    CONCLUSION.................................................................................................................24

1

### TABLE OF AUTHORITIES

2

**Cases**

3

*Ching v. Siemens Indus., Inc.*,
4      No. 11 Civ. 4838 (MEJ), 2014 WL 2926210 (N.D. Cal. June 27, 2014) .............................. 16

5

*Chun-Hoon v. McKee Foods Corp.*,
6      716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................... 22

7

*Churchill Village, LLC. v. Gen. Elec.*,
     361 F.3d 566 (9th Cir. 2004) ................................................................... 14, 22
8

*Class Plaintiffs v. City of Seattle*,
9      955 F.2d 1268 (9th Cir. 1992) ................................................................... 14
10

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
11      No. 06 Civ. 3903 (TEH), 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........................ 16, 17

12

*Custom LED, LLC v. eBay, Inc.*,
13      No. 12 Civ. 0350 (JST), 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .............................. 19

14

*Dennis v. Kellogg Co.*,
15      697 F.3d 858 (9th Cir. 2012) ................................................................... 23

16

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
     No. 08 Civ. 1365 (CW)(EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................. 22
17

18 *Greko v. Diesel U.S.A., Inc.*,
     No. 10 Civ. 2576 (NC), 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) .......................... 17, 18
19

20 *Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ................................................................... 14, 15

21

22 *In re Netflix Privacy Litig.*,
     No. 11 Civ. 0379 (EJD), 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................ 17, 18

23

24 *In re Omnivision Techs.*,
     559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 19, 20

25

26 *In re Syncor ERISA Litig.*,
     516 F.3d 1095 (9th Cir. 2008) ................................................................... 14

27 *Lane v. Facebook, Inc.*,
     696 F.3d 811 (9th Cir. 2012) ................................................................... 22, 23
28

*Nachshin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) .......................................................... 23

*Noll v. Ebay, Inc.*,
    309 F.R.D. 593 (N.D. Cal. 2015) ..................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ........................................... 14, 15, 18, 21

*Pierce v. Rosetta Stone, Ltd.*,
    No. 11 Civ. 1283 (SBA), 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013) ............................ 21

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ....................................................... 17, 23

*Schaffer v. Litton Loan Servicing, LP*,
    No. 05 Civ. 7673 (MMM), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ........................ 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................... 14

*Wren v. RGIS Inventory Specialists*,
    No. 06 Civ. 5778 (JCS), 2011 WL 1230826 (N.D. Cal. April 1, 2011) ........................ 22, 24

**Other Authorities**

Fed. R. Civ. P. 23(e) ................................................................. 2, 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

Plaintiffs Ruiqi Ye and Yolin Han hereby give notice that on May 25, 2017 at 1:30 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward M. Chen, United States District Judge for the Northern District of California, 450 Golden Gate Avenue, 17th Floor, Courtroom 5, San Francisco, California, Plaintiffs and Class Counsel in the above captioned action will and hereby do move this Court for an Order (a) granting Plaintiffs' Motion for Final Approval of Class Action Settlement; (b) granting Service Awards to Named Plaintiffs in the amount of $5,000.00 each; and (c) granting Plaintiffs' Motion for Class Counsel's Fees and Expenses in the amount of $418,560.00 for work performed throughout this action and $90,000.00 in costs.  *See* Ex. 1.

As discussed in the accompanying memorandum, the proposed class action settlement is fair, reasonable and appropriate under applicable law, and is well-justified under the circumstances of this matter.

This motion is based upon this notice of motion and motion; the accompanying memorandum of points and authorities; the declaration of Jeanne M. Christensen filed in support, the exhibits attached hereto; the proposed Class Settlement Agreement previously filed with the Court and all papers filed in support thereof; the pleadings and papers on file in this action; any matters of which the Court may or must take judicial notice; and on such additional papers and arguments as may be presented at or before the hearing of this matter.

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Ruiqi Ye and Yolin Han ("Plaintiffs") hereby submit this Memorandum of

Points and Authorities in support of their motion for final approval of the Settlement of this

Action and entry of the Proposed Final Order and Judgment ("Judgment").[1]

## I.   INTRODUCTION

The Court has preliminarily approved the proposed Settlement reached by the parties in

this Action, and approved the parties' proposed notice program.  *See* Dkt. No. 161.  Notice has

been disseminated to the Class as directed by the Court.  By this motion, Plaintiffs respectfully

request that the Court conduct a final review of the Settlement, and approve the Settlement as

fair, reasonable and adequate, as required by Rule 23.  Fed. R. Civ. P. 23(e)(2).

The Settlement is an extraordinary result for the Class.  The product of extensive arms-

length negotiations between the parties and their experienced and informed counsel, the

Settlement is fair, reasonable, and adequate given the claims, the alleged harm, and the parties'

respective litigation risks.

Pursuant to the terms of the Settlement, Defendant Sephora USA, Inc. ("Sephora") will

pay $950,000.00 to establish a non-reversionary Settlement Fund from which Class Members

who submit valid claims will be sent cash payments or Electronic Gift Cards.  It is expected that

100% of net settlement funds will be distributed to the Class, with at least 11% (or even more)[2]

of Class Members receiving payments.  With this claims rate, Authorized Claimants stand to

---

[1]   Unless otherwise defined herein, this Memorandum of Points and Authorities
incorporates by reference the defined terms set forth in the Settlement Agreement filed on
December 9, 2016, and all such terms shall have the same meaning herein.  *See* Dkt. No. 147-2.

[2]   The Claims Administrator has sent out deficiency letters to claimants whose forms did
not initially show their claims to be valid.  *See* Ex. 5, Declaration of Kelly Kratz ("Kratz Decl.")
at ¶ 14.  The final deadline for valid deficiency responses is April 28, 2017, and as such, if there
are additional claims that have been converted to valid prior to the Fairness Hearing, Class
Counsel will update the Court.

receive $123.86 in cash or $247.73 in Electronic Gift Card amounts, should the Court approve Class Counsel's fees and expenses, the Service Awards to Named Plaintiffs and the Claims Administrator's administrative costs.

Moreover, the Settlement provided for a robust, multi-pronged notice program and user-friendly claims process that have been implemented by the Claims Administrator and the parties.

The effectiveness of the notice program, the simplicity of the claims process, and the adequacy of the Settlement are all reflected in the very positive reaction from the Class thus far. The deadline for Class Members to submit claims, request to be excluded, or object was April 3, 2017. Approximately 1,698 valid claims were submitted, out of 13,879 Class Members who received the Notice. Only one class member has objected to the Settlement and requested to speak at the Fairness Hearing, and only three Class Members have opted out of the Settlement. This single objection should be overruled. Class Counsel obtained an excellent result for the Class, despite the very real risks of facing adverse rulings on Plaintiffs' class certification motion or on the merits. Plaintiffs therefore respectfully submit that the objection should be overruled, and that the Court should grant final approval of the Settlement and award attorneys' fees and expenses for Class Counsel and service awards for the Plaintiffs in the amounts requested.

## II.   BACKGROUND

### A.   Plaintiffs' Allegations

In 2014, a sale for Sephora's Very Important Beauty Insider ("VIB") members was scheduled to occur from November 6-10, 2014 (the "Sale"). *See* Dkt. No. 1 at ¶ 19. Beginning late in the day on November 5, 2014, Sephora's website began experiencing intermittent outages or "crashes" that prevented all website access. *Id.* at ¶ 27. The outages continued for an approximate 30-hour period before the site regained connectivity and customers were once again

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

able to make online purchases.  *Id.* at ¶ 28.  During this 30-hour period, Plaintiffs contend that the Information Technology ("IT") Department at Sephora believed excessive account creation and/or logins were responsible for the outages.  *Id.* at ¶¶ 30-31.  Specifically, Plaintiffs allege that the IT Department said that it deactivated accounts associated with three e-mail service providers based in China that use Chinese as the default language: @qq.com; @126.com; and @163.com (the "Chinese Domains") because it had seen evidence of excessive account creation and/or logins from the Chinese Domains that it believed could only be explained through "bots" or automated scripts.  *Id.* at ¶ 32.

During the 30-hour outage, the IT Department implemented a code (the "Code") to deactivate all online accounts associated with the Chinese Domains.  *See* Dkt. No. 146 at p. 4. Plaintiffs allege that the Code impacted thousands of users and prevented them from the ability to make purchases online during the Sale.  *See* Dkt. No. 1 at ¶¶ 33-34.  For a period of weeks, Plaintiffs allege that many of these users continued to be deactivated and their accounts were not restored until after this action was filed.[3]  As a result, Plaintiffs allege that these users were denied the 20% discount during the Sale and the ability to make purchases online and the ability to accumulate points, and also lost access to their accumulated points.  *Id.* at ¶¶ 50-55.

### B.   Class Counsel's Investigation and Discovery

Before filing suit, Class Counsel conducted a thorough factual investigation, including tracking and analyzing Sephora's public statements regarding the deactivation of accounts, reviewing Sephora's purported terms of service and the methods by which such terms were

---

[3]     Class Members learned about the deactivation when they received the following message from Sephora, "Sorry, your account has been locked for security reasons.  Please call Customer Service at 1-877-737-4672."  *See* Dkt. No. 146 at n.4.  Other users learned about the deactivations from reading Sephora's Facebook statement posted on November 7, 2014.  *See* Dkt. No. 1 at ¶¶ 43-46.

communicated to consumers, and speaking with numerous customers about their experiences with the Sale as well as reviewing documentation from those customers.  *See* Dkt. No. 167 at p. 7.  Class Counsel also conducted considerable legal research regarding the legal issues raised, and expected to be raised, in the litigation.  *Id.* at pp. 7-8.

Class Counsel's investigative efforts continued after the Complaint was filed, including through significant formal discovery.  *Id.* at p. 8.  Among other things, Class Counsel deposed two senior Sephora executives, propounded written discovery, reviewed and analyzed thousands of documents produced by Defendant (including, but not limited to, internal correspondence and documents regarding the events that precipitated the mass deactivation of accounts), reviewed and analyzed technical data in conjunction with technology consultants, and reviewed and analyzed pertinent customer data to evaluate potential class damages.  Class Counsel engaged in multiple meet and confer conference calls with Defendant's counsel regarding the appropriate scope of discovery and Defendant's search for and production of responsive materials.  *Id.* Moreover, Class Counsel continued to speak with potential Class Members about their experiences during the Sale.  *Id.*

There was significant litigation activity as well, requiring Class Counsel to research and address important issues.  There were a number of substantial discovery disputes that led Plaintiffs to research and file motions to compel.  *See* Dkt. Nos. 65, 84.  Moreover, in filing Plaintiffs' motion for class certification, Plaintiffs were required to conduct legal research and closely analyze the substantive issues, including Sephora's defenses, both for purposes of making their motion, and also to be in a position to advance the case and address those arguments at the mediation and the settlement conference before Judge Corley.  *See* Dkt. No. 167 at p. 8.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.     **Settlement Negotiations**

The Settlement is the product of extensive, hard-fought settlement negotiations and related efforts by Class Counsel.  *See* Dkt. No. 146 at pp. 17-18.  In October 2015, the parties participated in a mediation session with The Hon. Edward A. Infante (ret.), an experienced mediator and former U.S. Magistrate Judge in this District.  The parties continued negotiations through Judge Infante, but negotiations stalled.  *See* Dkt. No. 167 at pp. 8-9.  Thereafter, Plaintiffs filed a motion to compel discovery on April 29, 2016.  *See* Dkt. No. 84.  The parties appeared before The Hon. Laurel Beeler to address discovery disputes on May 12, 2016.  *See* Dkt. No. 94.  Following further discovery and depositions, Plaintiffs' motion for class certification was fully briefed by August 25, 2016 and scheduled for oral argument on September 8, 2016.  *See* Dkt. Nos. 114-123, 126-129.  At the same time, the parties agreed to engage in further mediation.  *See* Dkt. No. 167 at p. 9.

The parties engaged in an all-day settlement conference before The Hon. Jacqueline S. Corley on August 24, 2016.  With Judge Corley's assistance, the parties reached a settlement and drafted terms.  *Id.*  After the parties reached agreement in principle on the merits they were able to reach an agreement, with Judge Corley's assistance, regarding Class Counsel's request for attorneys' fees and expenses.  *Id.*

Following the mediation, Class Counsel worked hard on negotiating and finalizing the written settlement agreement, forms of notice, claim form, exclusion form and other exhibits to the settlement agreement, and worked closely with the Claims Administrator on the design and implementation of the notice program and claims process.  *Id.*

D.     **Preliminary Settlement Approval**

On January 26, 2017, the Court granted preliminary approval of the Settlement, and

ordered that Notice be disseminated to the Class pursuant to the parties' proposed multi-pronged notice program.  *See* Dkt. No. 161.

### III.   THE SETTLEMENT

The following summarizes the Settlement's key terms.

#### A.   The Settlement Class

The Settlement Class is defined as follows: all Sephora customers who (i) had one or more Sephora "Beauty Insider" account(s) with VIB or VIB Rouge status as of November 4, 2014 that was associated with an e-mail address from the domain @qq.com, @126.com, or @163.com; (ii) had their account(s) deactivated as a result of the computer code that Sephora implemented on or about November 6, 2014; and (iii) attempted to but were unable to make a purchase at www.sephora.com using their "Beauty Insider" account(s) at some point in November 2014.  *See* Ex. 2 at §§ 1.2, 1.7, 3.  Sephora customers who meet all of the above criteria are part of the Settlement Class and eligible to submit a Claim Form.

#### B.   Benefits to the Class

##### 1.   The Settlement Fund

Pursuant to the terms of the Settlement, Sephora will pay $950,000.00 to establish a non-reversionary Settlement Fund to be used for: (a) providing cash payments and Electronic Gift Cards to Class Members who submitted valid claims ("Authorized Claimants"); and (b) payment of administrative costs,[4] attorneys' fees and expenses, and service awards to Plaintiffs.  As discussed herein, it is expected that the entire Settlement Fund (net of administrative costs,

---

[4]      The Claims Administrator estimates that the total administrative costs will be approximately $25,663.00.  *See* Kratz Decl. at ¶ 18.  The estimate increased subsequent to the preliminary approval hearing primarily because the Claims Administrator did not initially estimate the cost of sending Notice by mail to Authorized Claimants, or that some Authorized Claimants would only have addresses outside of the U.S.  *See* Dkt. No. 167 at n.6.

1

2

attorneys' fees and expenses, and service awards) will be distributed to Authorized Claimants, with at least 11% (or even more) of Class Members receiving payments.

### a.   Payments to Authorized Claimants

Pursuant to the Settlement, payments will be sent via mailed check or Electronic Gift Card to all Class Members who submit a timely and valid claim.  *See* Ex. 2 at § 3.2.  Payment amounts for Authorized Claimants will depend on the number of timely, valid claims that are submitted and will be distributed on a pro rata basis.  Based the number of Authorized Claimants, the Settlement will provide $123.86 in cash or $247.73 in an Electronic Gift Card per person out of the net Settlement Fund should the Court approve Class Counsel's fees and expenses, the Service Awards to Named Plaintiffs and the Claims Administrator's administrative costs.  *See* Christensen Decl. at ¶ 24.[5]  No amount of the Net Settlement Proceeds will revert to Sephora. Notably, as discussed below, the Settlement provides for further redistributions of any uncashed checks or unredeemed Gift Card funds to the National Asian Pacific American Women's Forum ("NAPAWF"), a non-profit organization.

### b.   The Claim Process

All Class Members had the opportunity to submit claims for settlement payments.  Class Members had the option of submitting claims electronically via the Settlement Website, by mail, or by e-mail.  The Claim Form, which was approved by the Court, is straightforward and user-friendly.  *See* Dkt. No. 161 at ¶ 9.  Class Members had until April 3, 2017 to submit claims, which was 45 days after the Notice was mailed out by the Claims Administrator.  *See* Ex. 2 at § 1.5; Dkt. No. 161; Kratz Decl. at ¶ 6.

---

[5]    All exhibits and paragraphs are referred to herein as "Ex. __" and "¶ __," respectively, and attached to the Declaration of Jeanne M. Christensen ("Christensen Decl.").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Claims Administrator has processed all Claim Forms submitted.  To that end, Sephora provided the Claims Administrator with the best data and information available to Sephora regarding the Class Members' accounts (the "Data").  *See* Ex. 2 at § 4.2.  Using the information provided by Class Members in their Claim Forms, and as can best be determined through Sephora's Customer Data, the Claims Administrator verified claims.  *See* Kratz Decl. at ¶¶ 13-14.  To all Class Members whose forms were deficient, the Claims Administrator sent cure letters, asking the claimants to provide additional information.  *Id.* at ¶ 15.  In response to the cure letters, an additional 26 valid claims were made as of April 19, 2017.  *Id.*  The Claims Administrator has verified that as of April 19, 2017, there are a total of 1,698 Authorized Claimants.  *Id.* at ¶ 17.

### c.    Mailing of Settlement Payments

Payments to Authorized Claimants will be made by mailed check or Electronic Gift Card to the physical or e-mail address, respectively, they provided in their Claim Forms.[6]  *See* Ex. 2 at §§ 4.2-4.3.

### d.    Disposition of Residual Funds

Should funds remain in the Settlement Fund after payments to Authorized Claimants (due the number of Authorized Claimants and the cap on the amount to be distributed per Authorized Claimant), they will be collected into a *cy pres* fund and delivered to NAPAWF.  None of the Settlement Fund will revert to Defendant.  *Id.* at § 3.

Authorized Claimants who select to receive checks will have 180 days from the date of the issuance to negotiate them.  *Id.* at § 3.3.  If any checks are not negotiated within that time period, they will be cancelled and the value of those check(s) will be distributed to NAPAWF.

---

[6]     The Electronic Gift Card will arrive via e-mail in the form of a fully-transferrable "code" that can be used at Sephora.com or in stores.

*Id.* Any funds that are unclaimed (*e.g.*, due to uncashed checks) 180 days after the deadline for mailing the initial settlement payment checks will be collected into a *cy pres* fund and delivered to NAPAWF. *Id.* at § 3.1.4.

Authorized Claimants who select to receive an Electronic Gift Card will have one year from the date of issuance to redeem the full value. *Id.* at § 3.4. Any funds that remain on an Electronic Gift Card at the end of that year will expire and the value of the residual funds, if any, will be distributed to the NAPAWF. *Id.*; Dkt. No. 152 at p. 11-14; *see also* Ex. 4 at 10:15-11:2.

### C.    Opt-Out and Objection Procedures

Any person within the Class had the option to opt-out of the Class by sending a written request, clearly stating their desire to be excluded, to the Claims Administrator or submitting a Request for Exclusion via the Settlement Website or by mail, postmarked by the opt-out deadline of April 3, 2017. *See* Ex. 2 at § 6.3.1.

Any Class Member also had the option to object to the Settlement, Class Counsel's fee application, and/or the requests for Plaintiffs' service awards, by mailing an objection to the Settlement Administrator, postmarked by the objection deadline of April 3, 2017. *Id.* at § 6.3.3.

There were three requests to be excluded from the Settlement and one objection. *See* Kratz Decl. at ¶¶ 11-12. These four individuals represent just 0.24% of the total 1,698 Authorized Claimants and just 0.03% of the total Settlement Class. *See* Christensen Decl. at ¶ 30.

### D.    Release

In exchange for the benefits provided pursuant to the Settlement, Named Plaintiffs and Class Members who did not opt out will release Defendant and related entities from any claims they may have related to the issues in the instant action. *See* Ex. 2 at § 7.1, *et seq.*; *see also* Dkt.

No. 152 at pp. 3-4.  Named Plaintiffs will also provide a general release to Defendant.  *See* Ex. 2 at § 7.2.1 *et seq.*

## IV.   NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM

The multi-pronged program approved by the Court in the Preliminary Approval Order, (*see* Dkt. No. 161) was implemented by the parties and the Claims Administrator.  Such program included direct notice (via e-mail and, where Sephora's billing records indicated a billing address, by supplemental mail notice) and other methods of notice, and is well-designed and tailored to ensure the best notice practicable under the circumstances.  *See* Christensen Decl. at ¶ 13; Kratz Decl. at ¶ 6.

### A.   Mailed and E-mail Notice

Pursuant to the Court-approved notice program, Sephora's Beauty Insider account records were utilized to provide direct mail and e-mail notice where Class Members' contact information was available.  Sephora provided the Claims Administrator with Customer Data which included, to the extent available, names, last known billing addresses (where available), and e-mail addresses for Class Members.  *See* Ex. 2 at § 4.2; Kratz Decl. at ¶ 4.  On or before February 17, 2017, the Claims Administrator updated the billing addresses in the Customer Data through the National Change of Address Database, and mailed the Notice of Settlement to each billing address, as updated.  *See* Kratz Decl. at ¶ 5.  A total of 10,604 Notices were mailed in hard copy, with over 75% delivered on the first attempt.  *Id.* at ¶ 8.  Appropriate steps were taken to re-mail Notices that were returned undeliverable and 515 Notices were re-mailed.  *Id.*

On February 17, 2017, the Claims Administrator also e-mailed the Notice to each e-mail address in the Customer Data.  A total of 15,054 Notices were e-mailed, approximately 43.9% of which (6,606 Notices) were successfully delivered (*i.e.*, did not bounce back).  *See* Ex. 2 at § 4.3;

Kratz Decl. at ¶ 7.

Between e-mail and mailed notices, a total of 13,879 Class Members received notice, or approximately 92.2%. *See* Kratz Decl. at ¶¶ 6, 10.

### B.   Additional Internet-Based Notice

Additionally, on or about February 17, 2017, Sephora posted the Notice of Settlement on its Facebook page and Internet home page.  These notices remained posted until the end of the Claim Period, April 3, 2017.  *See* Christensen Decl. at ¶ 14.

### C.   Settlement Website, E-mail Address and Toll-Free Number

As directed by the Court, the Claims Administrator also established a Settlement Website, www.beautyinsidersettlement.com, where Class Members could submit claims electronically, obtain additional information, and access copies of the Complaint, the Settlement, the long-form Class Notice, and Class Counsel's Fee Application.  *See* Ex. 2 at § 4.3.

The Claims Administrator also established an e-mail address and a toll-free telephone number where Class Members could obtain additional information and request a hard copy Claim Form or long-form Notice.  *See* Dkt. No. 167 at pp. 6-7; Kratz Decl. at Ex. A.

## V.   THE RESPONSE FROM THE CLASS HAS BEEN VERY POSITIVE

The response from the Class thus far has been very positive.  The deadline for Class Members to submit claims was April 3, 2017.  The Claims Administrator reports that 3,229 claims were submitted (including 1,569 claims submitted online via the Settlement Website, 1,077 mailed claims and 583 claims submitted by other means such as e-mail).  *See* Kratz Decl. at ¶ 16.  There were a total of 1,698 valid claims.[7]  *Id*. at ¶ 17. The overall take rate is

---

[7]      While a total of 3,229 claims were submitted, nearly half were deemed to be deficient. Of the 1,531 claims that have been rejected, 109 were submitted after the close of the Claim Period, 117 were duplicates (meaning that the same Class Member submitted multiple Claim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

approximately 11%. *See* Christensen Decl. at ¶ 23. Given the number of Authorized Claimants and the rates at which they elected to receive cash vs. Electronic Gift Cards, it is projected that each Authorized Claimant will receive $123.86 in cash or $247.73 in Electronic Gift Card. *Id*. at ¶ 24. Class Members will claim the entirety of the net settlement fund. *Id*. at ¶ 25.

The deadline for Class Members to opt-out or object was April 3, 2017. Only three persons have asked to be excluded, and just one objection has been submitted. *See* Kratz Decl. at ¶¶ 11-12.

The objector's statement merely declared: "I chose to remain apart [sic] of settlement, but I don't believe the settlement is fair and I will object in court," and as such, the basis of her objection was not clear. *See* Christensen Decl. at ¶ 33. Class Counsel spoke with the objector by telephone on or about April 12, 2017, where she was joined by her husband.[8] *Id.* at ¶¶ 36-39. The objector stated that she thought she deserved more money because the discrimination was so severe and that any amount she might recover under this Settlement was not what she believed the case is worth. *Id.* at ¶ 41. She stated that she at most spent approximately $500.00 per year on average at Sephora. *Id.* at ¶ 42. She did not attempt to contact any attorneys in 2014 when the events surrounding the Sale occurred and she further stated that she was unaware that there were any allegations of national origin or race discrimination because she was in the midst of her final exams. *Id.* at ¶¶ 43-44. Her first indication that any potential discrimination had occurred was when she received the Notice of Settlement. *Id.* at ¶ 45. Before she had an opportunity to speak further, her husband stepped in and declared that he had read somewhere that his wife was

---

Forms), and 1,305 Claim Forms were missing required information or did not include an e-mail address from a Chinese Domain (and therefore did not reflect a claim from a genuine Class Member). *See* Kratz Decl. at ¶¶ 13-14.

[8] The objector claimed that she needed her husband on the line in case she could not understand Class Counsel. *Id.* at ¶ 38.

entitled to a "statutory minimum" payment of "$250,000.00" for the discrimination she allegedly experienced.  *Id.* at ¶ 46. Class Counsel requested that they send information regarding such "statutory minimum" payments, but they have not yet sent it.  *Id.* at ¶ 47.  Later that week, the objector requested information regarding the Fairness Hearing via e-mail, which Class Counsel sent.  *Id.* at ¶ 48.  She stated that she plans to be present at the hearing, but she may be prevented if "business" that she and her husband have that is "worth in the millions of dollars" will cause them to be outside of the country on May 25, 2017.  *Id.*; Ex. 8.

## VI.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.   The Legal Standards for Settlement Approval

Courts in this circuit have long recognized that "'there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Schaffer v. Litton Loan Servicing, LP*, No. 05 Civ. 7673 (MMM), 2012 WL 10274679, at *7 (C.D. Cal. Nov. 13, 2012) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)); *see also Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (emphasizing the "strong judicial policy in favor of settlements, particularly in the class action context").

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  To meet the standard for approval, a settlement must be "fundamentally fair, adequate, and reasonable."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Id.*  The district court

has "the sound discretion" to approve or reject a settlement, since it has been "'exposed to the litigants, and their strategies, positions and proof.'" *Id.* (quoting *Officers for Justice*, 688 F.2d at 626). Factors considered by the district court in assessing a proposed settlement include: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[9] *Id.*

### B.   The Relevant Factors Weigh in Favor of Granting Final Approval

#### 1.   Strength of the Case

The proposed settlement fairly reflects the strength of Plaintiffs' case. While Plaintiffs believe their claims are meritorious, Sephora remains confident that its defenses are strong. *See* Dkt. No. 152 ("Joint Supplemental Brief") at pp. 6-10. As explained in the parties' Joint Supplemental Brief, Plaintiffs contend that they can prove their case by relying on certain evidence, including: the fact that Sephora does not deny that it deactivated all accounts from the Chinese Domains, damages could be ascertained through a random sampling of past Sale events and purchases made by prior buyers, and sentiment based on the accusation of being "resellers" is publicly available on Facebook, among other evidence. *Id.* at pp. 6-8.

Sephora, meanwhile, contends that it can defeat Plaintiffs' claims by pointing to: the difficulty in certifying a 42 U.S.C. § 1981 ("Section 1981") class; case law that indicates that resellers cannot recover in a Section 1981 case; the absence of any proof of intentional discrimination; and the unavailability of disparate impact as a means to recovery in a Section

---

[9]      The seventh factor is inapplicable here because there is no governmental entity involved.

1981 case, among other evidence and theories.  *Id.* at pp. 9-10.

Although Plaintiffs remain confident of their ability to prevail, they recognize that should litigation proceed, this action is highly technical and relies on substantial evidence stored on Sephora's databases that would need to be obtained and then analyzed.  *See* Christensen Decl. at ¶ 5.  Furthermore, Plaintiffs would need to show that the technical data showed that there would be no reasonable basis for Sephora's IT department to have taken the step of deactivating all accounts, and that such deactivations were instead discriminatory.  This would involve substantial testimony from experts as well as high-level Sephora executives, which would also entail significant motion practice.  *Id.* at ¶ 6.  Plaintiffs also recognize the risk of loss at trial, as well as the inherent expense and delay associated with continuing to litigate.  *Infra* at pp. 15-17.  In light of these factors, the proposed settlement reflects the strength and weaknesses of Plaintiffs' case and represents a fair and reasonable outcome.  *See* Christensen Decl. at ¶ 8.

## 2. <u>Risk, Expense, Complexity and Duration of Further Litigation</u>

The risks associated with further litigation also weigh in favor of final approval.  As described in Plaintiffs' Motion for Preliminary Approval, this case has been vigorously litigated from the start.  *See* Dkt. No. 167 at p. 2.  In addition to aggressively opposing class certification, Sephora would almost certainly move for summary judgment.  *See Ching v. Siemens Indus., Inc.*, No. 11 Civ. 4838 (MEJ), 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014).  These procedural obstacles substantially increase the risk that the Class would see no recovery at all.  *See LaGarde v. Support.com, Inc.*, No. 12 Civ. 0609 (JSC), 2013 WL 1283325, at *4 (N.D. Cal. Mar. 26, 2013).  As such, this factor favors preliminary approval of the Settlement because it avoids significant delays and provides all Class Members with an immediate, substantial benefit in the form of cash or an Electronic Gift Card.  *See Curtis-Bauer v. Morgan Stanley & Co., Inc.*, No. 06

Civ. 3903 (TEH), 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Sephora continues to deny that it has discriminated against any of its customers. *See* Dkt. No. 152 at pp. 6-10. The history of this case suggests that further litigation would continue to be prolonged and difficult.

Under any of these scenarios, continued litigation would increase the amount of attorneys' fees incurred, without necessarily improving the likelihood of a favorable resolution and monetary recovery for the class members. *See* Dkt. No. 146 at pp. 13-16. In contrast, the proposed settlement allows for immediate implementation of monetary relief. *Id.* at pp. 13-14. In sum, the risks and potential delay of further litigation, especially in a case that has already been litigated for over two and a half years, outweigh the immediate, concrete relief provided under the proposed settlement agreement. *See, e.g.*, *Greko v. Diesel U.S.A., Inc.*, No. 10 Civ. 2576 (NC), 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (approving a final settlement, and noting that "even with a strong case, further litigation would be time-consuming and expensive").

**3.   Risk of Maintaining Class Status Through Trial**

The settlement is also reasonable in light of the risks associated with obtaining class status and maintaining it through trial. This Court has not yet decided whether class certification is appropriate. However, even if Plaintiffs' request was granted, decertification is a risk. *See* *Noll v. Ebay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) (decertification of a class "at any time is an inescapable and weighty risk that weighs in favor of a settlement.") (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *In re Netflix Privacy Litig.*, No. 11 Civ. 0379 (EJD), 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  Sephora opposed the class certification motion and argued that individualized issues predominate.  While Plaintiffs are confident that they would prevail in the certification motion and defeat a decertification motion, the risks of engaging in further litigation counsel in favor of approving the proposed settlement agreement.  *See Greko*, 2013 WL 1789602, at *4 ("A motion for decertification would, at the very least, entail significant expense, and if successful, would have a dramatic effect on the ability of the absent class members to obtain any monetary recovery whatsoever.").

### 4.    Amount Offered in Settlement Versus Outcome at Trial

The amount offered in the proposed settlement is fair and reasonable.  As explained in detail in Plaintiffs' Motion for Preliminary Approval, as well as the parties' Joint Supplemental Brief, the monetary relief is substantial.  The settlement provides for a $950,000.00 settlement fund, distributed through a claims process.  *See* Dkt. No. 146 at p. 15.  Class members had the option of submitting claims through an online form, or via e-mail or U.S. mail.  *Id.*  After payment of expenses of administration and the requested attorneys' fees, Authorized Claimants will receive approximately $123.86 in cash or $247.73 in an Electronic Gift Card.  *See* Christensen Decl. at ¶ 24; *see also* Ex. 2 at § 3.1.3.

The Settlement amount represents a fair value to Class Members given the attendant risks of litigation, even though recovery could potentially be greater if Plaintiffs attained class certification, succeeded on all claims at trial, and survived an appeal.  *See Officers for Justice*, 688 F.2d at 628 ("It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").  Plaintiffs allege harm because of discriminatory bias in connection with Sephora's decision to deactivate

accounts associated with the Chinese Domains.  Further, Plaintiffs allege that at a minimum, customers were prevented from accessing or benefitting from the Sale.

Estimates regarding a maximum recovery for Plaintiffs would involve continued discovery into data from past VIB online sales as to:  (i) the average number of points redeemed in prior sales events; (ii) the values of similarly offered promotions; and (iii) the assessment of average purchase amounts, which would show average discounts received and average points accrued.  At best, a matrix of average purchases from online sales would provide a range of what is a fair assessment of damages.  *See* Dkt. No. 146 at p. 16.  This information would help project how much cost savings and points would have been received by Class Members had they not been blocked from the Sale.

This recovery is extraordinary for a consumer case involving denial of online purchases, as the amount that is recoverable by Plaintiffs is substantial as compared to the amount of savings they were denied when their access to the website was cut off.  *Id.*

For example, a VIB member (someone who makes purchases for a total of between $350.00 and $999.00 in a year), even if she were to spend $999.00 during the Sale, would only have lost out on $199.00 of cost-savings.  *Id.*  With this Settlement, that VIB member is eligible to receive up to $125.00 in cash, resulting in 63% of a total of $199.00 cost-savings.  *Id.*  Of course, many VIB members spend far less than $999.00 during the Sale, with anyone who intended to spend less than $625.00 during the Sale fully recouping their lost savings if they elect to receive a cash settlement award.  *See Custom LED, LLC v. eBay, Inc.*, No. 12 Civ. 0350 (JST), 2013 WL 6114379, at *14 (N.D. Cal. Nov. 20, 2013) (explaining that "courts have held that a recovery of only 3% of the maximum potential recovery is fair and reasonable when the plaintiffs face a real possibility of recovering nothing absent the settlement"); *In re Omnivision*

*Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement awarding class members 9% of potential damages).  Here, based on the uncertainties of law and fact, and the increased risks and costs necessary for continued litigation, the Settlement payment is fair and reasonable.  As such, this factor favors settlement.

In sum, the Settlement provides an avenue for obtaining significant monetary relief that is faster, less expensive, and more convenient than fully litigating this action.  As the Court recognized at the preliminary approval hearing, the fund "is a fair number because of the risks involved" taking into account the "risks in terms of certification questions" especially "in a 2[3](b)(3) case of predominance [that] could be an issue."  Ex. 4 at 18:15-22.

### 5.     Extent of Discovery Completed and the State of Proceedings

The proposed settlement was reached after substantial investigation into the merits of this case.  Over two and a half years of litigation, the parties conducted substantial discovery that included the review of over 10,000 documents produced by Sephora, many of which were highly technical; Sephora deposing Plaintiff Ye in New York and Plaintiff Han in San Diego; Plaintiffs deposing high-level Sephora employees in San Francisco; and discovery disputes litigated before The Hon. Laurel Beeler.  *Supra* at p. 4.  This thorough investigation allowed both parties to fully understand and evaluate Plaintiffs' claims and Sephora's defenses.  The parties further developed their cases through extensive motion practice, including full class certification briefing.  *Supra* at p. 5.

The proposed settlement was reached through highly contested negotiations held at arms' length, with the aid of first The Hon. Edward M. Infante (ret.) and then The Hon. Jacqueline S. Corley, after two separate mediation sessions and numerous rounds of informal negotiation. *Supra* at p. 5.  At the time of settlement, the litigation was at a stage where both parties had a

clear view of the strengths and weaknesses of their positions, which weighs strongly in favor of approving the settlement. *See, e.g.*, *Officers for Justice*, 688 F.2d at 627 (affirming the approval of a consent decree, where the case had been "aggressively litigated . . . for six years," resulting in a large record and many pre-trial orders, assuring the court that the proposed settlement "was not hastily arrived at").

### 6.   Experience and Views of Class Counsel

The experience and views of Counsel also support approving the proposed settlement agreement. As set forth more fully in Plaintiffs' Motion for Attorneys' Fees and Expenses and Service Awards to Named Plaintiffs ("Attorneys' Fees Motion"), Class Counsel have significant experience in discrimination and consumer cases, as well as class action litigation. *See* Dkt. No. 168 at pp. 8-11. Class Counsel have worked on this case for over two and a half years and are familiar with Plaintiffs' claims and Sephora's defenses. The fact that Class Counsel believe that this settlement is fair, reasonable, and adequate weighs in favor of final approval. *See*, *e.g.*, *Pierce v. Rosetta Stone, Ltd.*, No. 11 Civ. 1283 (SBA), 2013 WL 5402120, at *5 (N.D. Cal. Sept. 26, 2013) ("Given the collective experience of the attorneys involved in this litigation, the Court credits counsels' view that the settlement is worthy of approval.").

### 7.   The Reaction of the Class

Finally, the reaction of the class members weighs in favor of approving the settlement. On February 17, 2017, Notice was sent to the 15,054 Class Members by e-mail using their @126.com, @163.com or @qq.com address associated with their VIB account. *Supra* at pp. 10-11. In addition, for the 10,604 Class Members for whom a valid billing address was on file, Notice was also sent via First Class U.S. Mail. *Id.* Only three class members have opted out,

and one objection to the settlement has been filed.[10]  This amounts to a 0.02% opt-out rate, and a 0.007% objection rate.  *See* Christensen Decl. at ¶ 28.  Courts often infer that a settlement is fair, adequate, and reasonable when relatively few class members object to it.  *See*, *e.g.*, *Churchill Village, LLC*, 361 F.3d at 577 (affirming settlement approval where 45 of the approximately 90,000 notified class members objected and 500 opted out).  "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Garner v. State Farm. Mut. Auto. Ins. Co.*, No. 08 Civ. 1365 (CW)(EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks omitted); *see also, e.g.*, *Wren v. RGIS Inventory Specialists*, No. 06 Civ. 5778 (JCS), 2011 WL 1230826, at *11 (N.D. Cal. April 1, 2011) (same), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (concluding that class members had an "overwhelming positive reaction" to the proposed settlement where "[a] total of zero objections and sixteen opt-outs (comprising 4.86% of the class)" were made from a class of 329 members).

## C.   The Proposed *Cy Pres* Beneficiary is Reasonable

The Court should also approve the parties' designated *cy pres* beneficiary.  Under the agreement, excess settlement funds will be sent to the National Asian Pacific American Women's Forum.  *See* Ex. 2 at § 3.1.4.  This organization is comprised of "the next best class of beneficiaries" in this lawsuit, as it is a non-profit organization that advocates on behalf of Asian

---

[10]     The lone objector did not specify what components of the settlement she does not find to be fair.  *See* Ex. 7.  Based on Class Counsel's discussions with the objector, it seems that she believes that she is entitled to a payment of $250,000.00 due to a purported "statutory minimum" penalty that should be assessed.  While she stated that she would provide additional information in support of her beliefs, to date, Class Counsel has not yet received any such information.  Christensen Decl. at ¶¶ 46-47.

American and Pacific Islander ("AAPI") women and girls to advance their civil rights, both locally in California and nationally. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks omitted), *cert. denied*, 134 S. Ct. 8 (2013). As the Ninth Circuit has explained, a *cy pres* award should "bear[] a substantial nexus to the interests of the class members." *Id.* at 821. This means that the award should account for "the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *see also Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (stating that a *cy pres* award "must not benefit a group too remote from the plaintiff class" (internal quotation marks omitted)). The parties' designation of NAPAWF satisfies all of these requirements. The organization was founded with the mission to build a movement to advance social justice and human rights for AAPI women and girls by providing leadership development and advocacy against discrimination. *See* Dkt. No. 146 at p. 10. In addition, the Court recognized at the preliminary approval hearing that it was "satisfied that this organization [referring to NAPAWF] is an appropriate *cy pres* recipient" based on the parties' due diligence and the organization's mission statement. *See* Ex. 4 at 23:7-10.

D.   **Named Plaintiffs' Request for Service Awards is Reasonable**

Plaintiffs' request for service awards of $5,000.00 for each of the two Class Representatives should also be approved. As set forth in detail in the Attorneys' Fees Motion, Plaintiffs have devoted substantial time to the litigation and pursued this case for nearly three years, without any guarantee of success. *See* Dkt. No. 167 at p. 21. As such, they are entitled to service awards to compensate them for the work done, to make up for financial risks taken, and to recognize their willingness to enforce the law in this case. *See Rodriguez*, 563 F.3d at 958-59;

*Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *see also, e.g.*, *Wren*, 2011 WL 1230826, at *31-32.  In addition, the service awards are reasonable and appropriate because they were not conditioned in any way on Plaintiffs' support for the Settlement Agreement.  Each Plaintiff maintained the right to separately and independently support, object to, or comment upon any settlement at any point in the litigation, and neither Plaintiff had any conflicts with the class overall.

### E.    Class Counsel's Request for Fees and Expenses is Reasonable

Plaintiffs' request for attorneys' fees and costs to Class Counsel is also reasonable.  As explained in the Attorneys' Fees Motion, Class Counsel achieved excellent results.  Sephora has agreed to pay up to $125.00 in cash or $250.00 in Electronic Gift Cards to VIB members affected by the mass deactivations in November 2014.  Moreover, the accounts that had been deactivated were reactivated shortly after this action was filed.  Absent this litigation, the likelihood of these accounts being reactivated was extremely low.  *See* Dkt. No. 167 at p. 9.  Pursuant to the Settlement Agreement, Class Counsel agreed not to seek an award of fees in excess of $418,560.00 and expenses up to and including $90,000.00 expended in this litigation.  *See* Ex. 2 at § 5.1.  These amounts are reasonable in light of the duration of the litigation, the complexity of the issues, and the excellent results that Class Counsel achieved.  As of the date of this brief, the only objection that has been received makes no mention of any objection to the Attorneys' Fees Motion.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter an Order: (a) granting Plaintiffs' Motion for Final Approval of Class Action Settlement; (b) awarding attorneys' fees and expenses for Class Counsel; (c) approving service

awards for the Plaintiffs in the amounts requested; (d) approving administration costs to the Claims Administrator in the amount requested; and (e) granting such other and further relief as may be appropriate.

Dated: April 20, 2017
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Douglas H. Wigdor
David E. Gottlieb
Jeanne M. Christensen
Elizabeth J. Chen

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
jchristensen@wigdorlaw.com
echen@wigdorlaw.com

**ANDERSON & POOLE, P.C.**

Jamie C. Couche

601 California Street, Suite 1300
San Francisco, California 94108
Telephone:  (415) 956-6413
Facsimile:  (415) 956-6416
jcouche@adplaw.com

*Counsel for Plaintiffs*